| | |
|---|---|
| TRAVEN MARQUET LEE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| KENNETH E. LASSITER, ) | |
| ) | |
| Respondent. ) | |

Petitioner, a state inmate, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter came before the court on respondent's motion for summary judgment (DE 8) pursuant to Federal Rule of Civil Procedure 56, which was fully briefed. The issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment.

**STATEMENT OF CASE**

On November 3, 2010, petitioner, in the Halifax County Superior Court, was convicted following a jury trial of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and attempted robbery with a deadly weapon. See State v. Lee, 720 S.E. 2d 884 (N.C. App. 2012). Petitioner was sentenced to the following consecutive terms of imprisonment: (1) two hundred twenty (220) to two hundred seventy-three (273) months for the attempted first-degree murder conviction; (2) one hundred sixteen (116) to one hundred forty-nine (149) months for the assault with a deadly weapon with intent to kill inflicting serious injury

conviction; and (3) one hundred three (103) to one hundred thirty-three (133) months for the attempted robbery with a dangerous weapon conviction. Id.

Petitioner filed a direct appeal, and, on January 17, 2012, the court of appeals filed a published opinion finding no prejudicial error. Id. On April 12, 2012, the North Carolina Supreme Court allowed discretionary review, and on December 14, 2012, denied discretionary review as improvidently granted. See State v. Lee, 724 S.E. 2d 518 (2012) (allowing discretionary review); State v. Lee, 734 S.E. 2d 571 (2012) (finding review improvidently allowed).

On January 18, 2013, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging the following claims: (1) speedy trial violation; (2) denial of petitioner's request to remove the shackles in the presence of the jury; (3) variance between the indictment and the evidence introduced at trial; and (4) coerced/compromised jury instruction. Respondent subsequently filed a motion for summary judgment, which was fully briefed.

## STATEMENT OF FACTS

The facts as summarized by the North Carolina Court of Appeals are as follows:

> On the night of 7 January 2009, Crystal Boswell ("Boswell") was working as a cashier at a convenience store called Nana's Quick Mart located in Roanoke Rapids, North Carolina. Boswell was sitting on a stool behind the counter near the cash register when defendant entered the store. Boswell had seen defendant around the area and knew him by name. Cecil Ransom ("Ransom") was also present at Nana's Quick Mart on the night of 7 January 2009 and was standing behind the counter waiting to speak with the store owner, Raed Sirhan ("Sirhan"), when defendant walked in the door. Ransom had known defendant for several years.
>
> When defendant entered the store, he was carrying an AK–47 rifle. Defendant said "give it up" and began shooting. Boswell got on the ground, crawled under the counter, and heard defendant fire more than five shots. Ransom heard defendant say "give it up" and turned

2

to see defendant begin firing the gun. Ransom dove into the store office behind Sirhan, who was sitting in his office chair. Ransom kicked the office door shut and noticed that Sirhan had been shot. Sirhan gave Ransom a gun that Sirhan kept in his desk and told Ransom not to "let them kill me." Ransom then returned fire through the closed office door. When the shooting stopped, Boswell saw Sirhan sitting in his office chair with his leg bleeding.

Edward Hawkins ("Hawkins") was also working at Nana's Quick Mart on the night of 7 January 2009. He had seen defendant on a few prior occasions in the area. Hawkins saw defendant enter the store carrying the AK–47 rifle, heard the words "give it up," and saw defendant begin to fire the gun. Hawkins then ran to the back of the store and into the store's beer cooler. Hawkins also saw a second armed man standing behind defendant. Once things were quiet, Hawkins came out of the cooler. Hawkins saw blood and holes in Sirhan's shirt and pants legs and called emergency services.

Deputy Christopher Scott ("Deputy Scott") with the Halifax County Sheriff's Office responded to the call and was the first officer to arrive at the scene. Deputy Scott found Sirhan sitting in his office chair with two gunshot wounds in his thighs. Deputy Scott called for an ambulance, and Sirhan was taken to the hospital, where he underwent multiple surgeries in an attempt to repair the damage from gunshot wounds to both his right and left thighs as well as his left pelvis. At the scene, Deputy Scott spoke with Boswell about the incident, and Ransom informed Deputy Scott that defendant was responsible for the shooting.

Deputy Jay Burch ("Deputy Burch") also responded to the call at Nana's Quick Mart and observed the crime scene. Deputy Burch observed multiple shell casings from both a high-powered rifle and a handgun around the front counter of the store. Lieutenant Bobby Martin ("Lieutenant Martin") photographed the scene inside the store and logged each piece of evidence. Inside Sirhan's office, Lieutenant Martin photographed blood spots and items that appeared to be pieces of flesh, as well as over $3,000 in cash lying on top of Sirhan's desk. Lieutenant Martin also collected the items of evidence from inside the store, including the money from Sirhan's desk, empty shell casings, blood and flesh material, and a .45 caliber handgun. After collecting the evidence and clearing the crime scene, the officers

3

secured arrest warrants for defendant based on the statements given by the witnesses at the scene.

On 8 January 2009, defendant was arrested by Roanoke Rapids police officers and placed in the custody of Patrol Lieutenant Stevie Salmon ("Lieutenant Salmon") with the Halifax County Sheriff's Office. Defendant asked Lieutenant Salmon why he was being arrested, to which Lieutenant Salmon responded that defendant had outstanding warrants for attempted murder and armed robbery. While sitting handcuffed in the front seat of Lieutenant Salmon's patrol vehicle, defendant stated to Lieutenant Salmon that he had "tried to kill the mother f——— because he sold me some bad s——."

Within five minutes, Lieutenant Martin and Detective Sergeant Doug Pilgreen ("Detective Pilgreen") arrived and took defendant into their custody. Once the officers placed defendant in their patrol vehicle, Lieutenant Martin read defendant his Miranda rights and had defendant sign a statement that defendant had been so advised. During the car ride to the Sheriff's Office, defendant admitted to Lieutenant Martin that he had gone into the convenience store and shot at Sirhan. Defendant stated he only intended to kill Sirhan because Sirhan had shorted him on a drug deal. Lieutenant Martin reduced defendant's statement to writing and defendant signed the statement. Upon arriving at the sheriff's office, defendant gave a more detailed statement as to what had happened on the previous night. Defendant again stated that he had purchased "$5,000 worth of cocaine" from Sirhan, "but it was bad." Defendant stated he called Sirhan and asked for his money back, to which Sirhan responded that defendant would "have to take an L on it." Defendant stated he "couldn't take an L" and that he "was going to get [his money] back any way [he] could," so he went to Sirhan's store with an AK–47 gun, saw Sirhan sitting in his office, and "started shooting."

On 10 January 2009, after being Mirandized and waiving his rights, defendant gave another statement to Detective Pilgreen. Defendant gave Detective Pilgreen the name of the individual who had supplied defendant with a car and the gun, as well as a detailed account of the events leading up to the shooting. Defendant again stated that Sirhan had sold him "some bad dope," that defendant told Sirhan he wanted his "money back or some more dope," and that "[he] went to the store to shoot [Sirhan]." Defendant also stated the individual supplying the

4

gun sent his "men" to the store with defendant to rob Sirhan for drugs, "since defendant was going in there anyway."

On 15 January 2009, defendant gave a similar statement to Lieutenant Martin, providing names of the other individuals that accompanied defendant to Nana's Quick Mart on "the night of the robbery," including an individual who went into the store with defendant carrying another assault rifle, and stating that he "only wanted to settle with [Sirhan] over some bad dope." Defendant again gave a similar statement to Special Agent Harold McCluney, Jr. ("Special Agent McCluney") of the Bureau of Alcohol, Tobacco, and Firearms, stating that he had discussed robbing Sirhan's store with the individual supplying the gun and that he "wanted to shoot [Sirhan] because [Sirhan] had disrespected him regarding the drugs and [Sirhan] wouldn't give him his money back."

Beginning on 1 November 2010, defendant was tried by a jury on charges of attempted first-degree murder of Sirhan, Boswell, and Ransom; attempted robbery with a dangerous weapon of Sirhan, Boswell, and Ransom; and AWDWITKISI of Sirhan. Defendant represented himself at trial, with standby counsel. At the close of the evidence, the trial court dismissed the charges of attempted murder and attempted robbery of Boswell, dismissed the charge of attempted robbery of Ransom, and submitted the remaining charges to the jury. The jury returned verdicts of guilty on the charges of attempted first-degree murder, attempted robbery with a dangerous weapon, and AWDWITKISI on Sirhan. The jury returned a verdict of not guilty on the charge of attempted first-degree murder of Ransom.

Lee, 720 S.E.2d at 888.

## DISCUSSION

A. Motion for Summary Judgment

    1. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v.

Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it

6

does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

2. Analysis

    a. Speedy Trial

In his first claim, petitioner argues that the trial court violated his right to a speedy trial pursuant to the Sixth Amendment to the United States Constitution. Respondent contends that petitioner did not properly present his speedy trial claim to the state courts and that it is now procedurally barred. Absent a valid excuse, a state prisoner must exhaust his remedies in state court before seeking federal habeas corpus relief. See 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, an inmate must fairly present his claims to the state court. This exhaustion requirement compels a habeas petitioner to "invok[e] one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A habeas petitioner has the burden of proving that a claim is exhausted. Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994).

A prisoner must exhaust the remedies available to him in state court before he files a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A). Section 2254's exhaustion

7

requirement demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy the exhaustion requirement of section 2254 by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the Supreme Court of North Carolina for discretionary review, or by filing a MAR and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-27, 7A-31, 15A-1422.

A claim that has not been adequately presented to the state courts may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner now attempted to present it. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000); Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). A claim treated as exhausted and consequently procedurally defaulted because it would now be procedurally barred in state court can overcome the default if the petitioner can demonstrate cause and actual prejudice and/or a miscarriage of justice. Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 162 (1996)); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must show something external prevented him from complying with the state procedural rule. Coleman, 501 U.S. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. United States v. Frady, 456 U.S. 152, 168 (1982).

In this case, petitioner raised his speedy trial claim in his direct appeal to the North Carolina Court of Appeals, but did not raise it in a petition for discretionary review to the North Carolina

Supreme Court or in a MAR. Because of this omission, petitioner has not adequately presented his claims to the state courts. If petitioner now returned to state court to exhaust his claim by filing a motion for appropriate relief, he would be procedurally barred by North Carolina's procedural bar statute, N.C. Gen. Stat. § 15A-1419(a)(1), (a)(3), and (b). See Rose v. Lee, 252 F.3d 676, 683 (4th Cir.) (holding procedural bar pursuant to N.C. Gen. Stat. § 15A-1419 is mandatory), cert. denied, 534 U.S. 941 (2001); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998) (holding § 15A-1419(a)(3) to be an independent and adequate state procedural bar, precluding federal habeas review), cert. denied, 525 U.S. 1155 (1999); McCarver v. Lee, 221 F.3d 583, 588-589 (4th Cir. 2000); Hocutt v. Hathaway, No. 5:07-HC-2096-FL, Order at 11-12 (E.D.N.C. Feb. 26, 2008) (same), appeal dismissed by, 296 Fed. Appx. 348, 348 (4th Cir. 2008); Blakeney v. Lee, No. 3:05-CV-10-V, 2007 WL 1341456, * 35 (W.D.N.C. May 3, 2007), aff'd, 314 F. App'x 572 (4th Cir. 2009) (same). Based on the foregoing, petitioner's claim is procedurally defaulted.

Petitioner argues that he is able to overcome the procedural default because he is able to establish cause and prejudice. In support of this argument, petitioner alleges that his appellate counsel was ineffective because she failed to follow petitioner's direction to raise his speedy trial claim in his petition for discretionary review to the North Carolina Supreme Court. However, petitioner's argument is insufficient to establish cause for his procedural default because he had no right to counsel to file a notice of appeal and/or discretionary petition in the North Carolina Supreme Court. See Wainwright v. Torna, 455 U.S. 586, 587-88 (1982); Ross v. Moffitt, 417 U.S. 600, 610 (1974) (concluding that there is no right to free counsel beyond first appeal as of right); Coleman v. Thompson, 501 U.S. 722, 752 (1991). Thus, petitioner is unable to establish cause for his procedural default, and this claim is procedurally defaulted.

9

b.  Shackled in the Jury's Presence

In his second claim, petitioner argues that the trial court violated his rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it denied his motion to remove his shackles while in the presence of the jury. Plaintiff raised this claim on direct appeal. The court of appeals adjudicated this claim, and determined that the trial court committed harmless error. Specifically, the court of appeals found as follows:

> Defendant's second contention is that the trial court erred in denying his motion to remove the shackles from his ankles while he was in the presence of the jury. Defendant argues the trial court violated the statutory provisions of N.C. Gen. Stat. § 15A–1031 (2009), as well as his right to due process. In reviewing the propriety of physical restraints in a particular case, "the test on appeal is whether, under all of the circumstances, the trial court abused its discretion." State v. Tolley, 290 N.C. 349, 369, 226 S.E.2d 353, 369 (1976).
>
> In Tolley, our Supreme Court established that "there has evolved the general rule that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary instances." Id. at 365, 226 S.E.2d at 366.
>
>> The reasons being: (1) it may interfere with the defendant's thought processes and ease of communication with counsel; (2) it intrinsically gives affront to the dignity of the trial process, and most importantly; (3) it tends to create prejudice in the minds of the jurors by suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion.
>
> State v. Jackson, 162 N.C. App. 695, 700, 592 S.E.2d 575, 578 (2004).
>
> Nonetheless, "the rule against shackling is subject to the exception that the trial judge, in the exercise of his sound discretion, may require the accused to be shackled when such action is necessary to

10

prevent escape, to protect others in the courtroom or to maintain order during trial." Tolley, 290 N.C. at 367, 226 S.E.2d at 367; see also N.C. Gen.Stat. § 15A–1031. Tolley enumerates a non-exhaustive list of twelve material circumstances a trial judge should consider in determining whether to shackle a defendant:

> [T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

Tolley, 290 N.C. at 368, 226 S.E.2d at 368.

Both Tolley and N.C. Gen.Stat. § 15A–1031 set forth the proper procedure a trial judge should follow when ordering a defendant to remain shackled during trial. The trial judge must state for the record, out of the presence of the jury and in the presence of the defendant, the particular reasons for the judge's decision and give the defendant an opportunity to voice objections and persuade the court that such measures are unnecessary. Tolley, 290 N.C. at 368, 226 S.E.2d at 368; N.C. Gen.Stat. § 15A–1031. Indeed, this Court has emphasized that "[s]hould the trial judge, in his sound discretion, decide shackling is a necessary means for a safe and orderly trial in his or her courtroom, the determination must be supported by adequate findings." Jackson, 162 N.C.App. at 700, 592 S.E.2d at 578 (emphasis added). When the need for physical restraints is controverted by the defendant, the trial judge should conduct a full evidentiary hearing and make formal findings of fact. Tolley, 290 N.C. at 368, 226 S.E.2d at 368; N.C. Gen.Stat. § 15A–1031. "In any event, a record must be made which reflects the reasons for the action taken by the court and which indicates that counsel have been

11

afforded an opportunity to controvert these reasons and thrash out any resulting factual questions." Tolley, 290 N.C. at 368–69, 226 S.E.2d at 368. This Court has previously "caution[ed] trial courts to adhere to the proper use of their discretion and provide the rationale for that discretion, via some finding substantiated in the record." Jackson, 162 N.C.App. at 701, 592 S.E.2d at 579. Moreover:

> Once the decision to shackle the defendant during trial has been made by the trial court in this fashion, . . . the judge should . . . instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt. This is the least that can be done toward insuring a fair trial.

Tolley, 290 N.C. at 369, 226 S.E.2d at 368 (emphasis added) (internal quotation marks and citation omitted); see also N.C. Gen.Stat. § 15A–1031.

In the present case, after the jury had been impaneled but before the State had called its first witness, defendant made a motion to the trial court to remove his shackles while he was in the presence of the jury. The trial court simply responded that defendant's motion "is denied," without providing any further elaboration. Thereafter, the State proceeded to call its first witness until the trial was recessed for the evening. On the following morning, before the jury was brought back into the courtroom, the trial court inquired of the bailiff whether defendant was "still wearing the leg chains." The bailiff informed the trial court that defendant was still wearing leg chains because it was "policy." The trial court then brought the jury back in and proceeded to instruct the jury that defendant was wearing "leg irons . . . because it is standard policy with the jail." The trial court then proceeded to give the following instruction to the jury:

Mr. Lee has not been convicted of a crime. He is not serving a sentence of any type. It is simply that he has not been able to make bond on these charges, and he is being held in custody because he was financially not able to make bond. It is standard policy of the

12

sheriff's department here or the jail that when a person is brought into the courtroom, he has to have the leg chains on.

The trial court then instructed the jury:

> [The shackles are] "no evidence whatsoever that [defendant] is guilty of anything or that he is being treated any differently or that he is more dangerous than anybody else, it is simply standard policy that a person who has not been able to make bond who is being held in custody and is brought into the courtroom has to have on leg chains.

Thus, it appears from the record that the trial court's sole reason for denying defendant's request to remove his shackles during trial was that defendant was financially unable to make bond and therefore required to remain in shackles pursuant to jail policy.

The trial court clearly did not follow the well-established law on this issue: the statutory procedures were not complied with, nor can we determine from the record that the trial judge considered any of the material factors enumerated in our case law in making his determination. In addition, the trial court did not provide defendant any explanation outside the presence of the jury for why it was requiring defendant to remain in shackles during the trial, nor did the trial court state any findings in the record to support the determination. Ordinarily, requiring defendant to remain in shackles during trial in the presence of the jury under these conditions is inherently prejudicial under our case law. See Tolley, 290 N.C. at 366, 226 S.E.2d at 367 ("[I]n the absence of a showing of necessity therefor, compelling the defendant to stand trial while shackled is inherently prejudicial in that it so infringes upon the presumption of innocence that it interfere[s] with a fair and just decision of the question of ... guilt or innocence." (alterations in original) (internal quotation marks and citations omitted)).

However, under the particular circumstances of this case, we conclude the trial court's error in requiring defendant to remain in shackles during the trial of his case was not fundamentally unfair and was therefore harmless. Notably, the trial court clearly and

13

> emphatically instructed the jury not to consider defendant's restraints in any manner, and despite having to present his own defense while wearing the shackles, defendant was still able to obtain an acquittal on one of the attempted murder charges against him. Furthermore, given the overwhelming evidence against defendant, including his own Mirandized statements, we fail to see how defendant's shackling contributed to his convictions in the present case. Nevertheless, we again strongly caution trial courts to adhere to the proper procedures regarding shackling of a defendant, as established by our Supreme Court in Tolley and our Legislature in section 15A–1031 of our General Statutes.

Lee, 720 S.E. 2d at 890.

Section 2254(d) "requires federal habeas courts to ascertain whether the underlying state court adjudication of a claim on the merits 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established' Supreme Court precedent. Bell, 236 F.3d at 160 (citing 28 U.S.C. § 2254(d)). Although the state court of appeals in this action analyzed petitioner's claim in terms of state law, this does not mean that the state court's decision was contrary to established federal law. Early v. Packer, 537 U.S. 3, 8 (2002). Rather, a state court does not need to cite Supreme Court precedents "so long as neither the reasoning nor the result of the state-court decision contradicts them." Id. Nor is a federal habeas court required to "offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the defendant's constitutional rights were violated during the state court proceedings." Bell, 236 F.3d at 160. Here, the court of appeals completed a detailed and thorough analysis of petitioner's claim, and, as set forth below, the court of appeals' reasoning was not contrary to clearly established federal law.

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that are justified by a state

14

interest specific to a particular trial." Deck v. Missouri, 544 U.S. 622, 629 (2005). The Court, in Deck, reasoned that visible shackling of a criminal defendant during trial "undermines the presumption of innocence and the related fairness of the fact-finding process." Id. at 630.

Respondent, in this case, does not dispute that petitioner's constitutional rights were violated by the trial court's refusal to grant petitioner's motion to remove his shackles. Instead, respondent argues that the trial court's decision was harmless beyond a reasonable doubt pursuant to Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). Under Brecht, a constitutional error in the trial court will not warrant federal habeas relief unless the error had "substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (citing Brecht, 507 U.S. at 631).

Petitioner, in this case, has not met the Brecht standard. First, the trial court gave the jury corrective instructions regarding petitioner's leg restraints, explaining that petitioner wore leg restraints because he was not able to make bond, and not because he had been convicted of a crime. Lee, 720 S.E. 2d at 891. The trial judge further instructed the jury that the leg restraints were not evidence that petitioner was guilty of a crime or that he was more dangerous than anyone else. Id. Juries are presumed to follow the court's instructions. Young v. Catoe, 205 F.3d 750, 764 (4th Cir. 2000) (citing United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994)). Thus, the corrective jury instruction weighs against a finding that the alleged error had a substantial and injurious effect.

Second, petitioner is unable to meet the Brecht standard due to the overwhelming evidence of his guilt presented at trial. Specifically, the evidence presented at trial showed that petitioner entered Nana's Quick Mart on January 7, 2009, carrying an AK-47 rifle and said "give it up." Lee, 720 S.E. 2d at 886. Petitioner then fired his gun. Id. Ransom, who had fled to Sirhan's office,

15

returned fire from inside Sirhan's office. Id. When the shooting ceased, Sirhan had been shot. Id. The record further reflects that petitioner made several Mirandized statements to law enforcement officers admitting that he went into Nana's Quick Mart on the date at issue and started shooting in order to get his money back or more drugs because Sirhan had sold him bad drugs. Id.

Finally, any inference of prejudice is negated by the fact that the jury acquitted petitioner of one of the attempted murder charges, despite the fact that petitioner was shackled. Additionally, there is no evidence that the leg restraints interfered with petitioner's thought process or the ease with which he communicated with his counsel. Based upon the foregoing, the court finds that petitioner has not provided any concrete evidence to demonstrate the trial court's denial of his request to remove the shackles had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, petitioner has not demonstrated that the court of appeals' denial of this claim constituted an unreasonable determination of the facts or a decision contrary to or involving an unreasonable application of Supreme Court precedent. Thus, respondent is entitled for summary judgment for this claim.

    c.      Remaining Claims

In his third and fourth claims, petitioner contends that there was a fatal variance between the indictment and the evidence that was introcuced at trial, and that the jury was coerced or compromised. Petitioner, in response to respondent's motion for summary judgment, concedes that respondent is entitled to summary judgment for these claims. Thus, for the reasons articulated in respondent's motion, the court GRANTS respondent's motion for summary judgment as to these claims.

B.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

17

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE 8) is GRANTED. The certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 20th day of March, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

18

Case 5:13-hc-02018-FL   Document 13   Filed 03/20/14   Page 18 of 18